# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN SANTIAGO, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AMERICAN TEXTILE COMPANY, INCORPORATED,<br><br>　　　　Defendant. | Civil Action No.: 2:23-cv-1811-CCW |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this 18th day of February, 2025 (the "Execution Date"), by and between Defendant, American Textile Company, Incorporated ("ATC"), and Plaintiffs (hereinafter defined) (each a "Party" and collectively the "Parties"), who filed suit in the above captioned action and in similarly-styled actions in other jurisdictions both individually and as representatives of one or more putative classes. Plaintiffs enter into this Settlement Agreement both individually and on behalf of the Settlement Class, as defined below.

WHEREAS, in the Actions (hereinafter defined), Plaintiffs allege that ATC misrepresented the thread count of its textile products, including bedding products with the Sealy name under the "Ultimate Indulgence," "Premium Comfort," "Cool Comfort," "Premium Cooling," and "Superior Cooling" descriptions in violation of federal and state law, including state consumer protection laws, state common law, and other claims;

WHEREAS, ATC denies Plaintiffs' allegations in the Actions and has asserted defenses to Plaintiffs' claims;

WHEREAS, extensive arm's-length settlement negotiations have taken place between Plaintiffs' Counsel (hereinafter defined) and counsel for ATC, including, among other things, bilateral negotiations, a mediation with a highly experienced mediator, further negotiation of key terms between counsel following the mediation, and the subsequent drafting and negotiation of this Settlement Agreement;

WHEREAS, Plaintiffs have conducted an extensive investigation into the facts and the law regarding the claims asserted in the Actions, and have concluded that a settlement with ATC according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the Settlement Class (hereinafter defined); and

WHEREAS, ATC believes that it is not liable for the claims asserted in the Actions and has good defenses to Plaintiffs' claims, but nevertheless has decided to enter into this Settlement Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that Plaintiffs and Settlement Class Members (hereinafter defined) have or could have asserted against the Released Parties, as defined below;

WHEREAS, these recitals are incorporated by reference into the remainder of this Settlement Agreement, without the need to restate them at length;

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between ATC and the Plaintiffs that the Actions be settled, compromised, and dismissed with prejudice as to the Released Parties, without costs to Plaintiffs, the Settlement Class, or ATC

except as provided for herein, subject to the approval of the Court, on the following terms and conditions.

## A.    <u>Definitions</u>

The following capitalized terms, as used in this Settlement Agreement, have the following meanings:

1.      "<u>Actions</u>" means the above-captioned action, *Santiago v. American Textile Company, Inc.* (W.D.P.A., Case No.: 2:23-cv-1811), along with the following, similarly-styled actions: *Bruno v. American Textile Company, Inc.* (N.D. Ill., Case No.: 1:22-cv-2937); *Lancaster v. American Textile Company, Inc.* (N.D.N.Y., Case No.: 1:22-cv-1280); and *Shaw v. American Textile Company, Inc.*, (S.D.N.Y., Case No. 1:23-cv-10193).

2.      "<u>Attorneys' Fees and Costs</u>" means such funds as may be awarded by the Court to Plaintiffs' Counsel for their work, efforts, and expenditures in connection with the Actions and settlement of the Actions, including fees, costs, and expenses of experts, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel in connection with the Actions and settlement of the Actions, as described more particularly in Section F of this Settlement Agreement.

3.      "<u>Claim Administrator</u>" means Verita Global, LLC.

4.      "<u>Claimant</u>" or "<u>Claimants</u>" means a consumer who has submitted a Claim Form.

5.      "<u>Claim Filing Deadline</u>" means ninety (90) calendar days after the hearing date on Final Approval.

6.      "<u>Claim Form</u>" means a form in substantially the same form as Exhibit A hereto to be used by members of the Settlement Class to make a claim under the Settlement.

7.      "Class Counsel" means Michael R. Reese of Reese LLP and Spencer Sheehan of Sheehan & Associates, P.C.

8.      "Class Period" means the period of time from October 19, 2016, through the date of Preliminary Approval.

9.      "Class Representatives" mean the named Plaintiffs in the Actions.

10.     "Court" means the U.S. District Court for the Western District of Pennsylvania.

11.     "Defendant" means ATC.

12.     "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

13.     "Effective Date" means the date when: (a) the Court has entered a final judgment order approving the Settlement set forth in this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the above-captioned Actions with prejudice has been entered; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Settlement and the entry of a final judgment has expired or, if appealed, approval of the Settlement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. This section shall not be construed as an admission that such parties have standing or other rights of objection or appeal with respect to this Settlement. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60, nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

14.     "Final Approval" means the order and judgment entered by the Court approving this Settlement Agreement and certifying a class for settlement purposes.

15.    "Household" means any number of natural persons who currently or during the Class Period occupied the same dwelling unit.

16.    "Long Form Notice" means notice to Settlement Class Members in substantially the same form as Exhibit B.

17.    "Notice Date" means the day on which the Claim Administrator initiates the Online Notice.

18.    "Notice Plan" means the Settling Parties' and Claim Administrator's plan to provide the Settlement Class with notice of the Settlement.

19.    "Online Notice" means notice to Settlement Class Members via electronic form in substantially the same form as Exhibit C.

20.    "Opt-Out and Objection Deadline" means twenty-one (21) calendar days prior to the initially scheduled hearing date on Final Approval.

21.    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, affiliates and assignees.

22.    "Plaintiffs" means the named plaintiffs in the Actions.

23.    "Plaintiffs' Counsel" means the following law firms: Reese LLP, Sheehan & Associates, PC, The Keeton Firm LLC, Bursor & Fisher, P.A., and any other law firms or attorneys who have entered an appearance on behalf of Plaintiffs in any of the Actions.

24.    "Preliminary Approval" means issuance of an order by the Court granting preliminary approval to this Settlement Agreement.

25.     "Product" and/or "Products" means bedding products with the Sealy name, including, but not limited to "Ultimate Indulgence," "Premium Comfort," "Cool Comfort," "Premium Cooling," and "Superior Cooling" with a thread count of 1250 listed on the packaging.

26.     "Proof of Purchase" means any of the following: the Product itself; packaging of the Product; or, a point of purchase receipt from a third-party retail source that reasonably establishes the fact and date of the purchase of the Product during the Class Period in the United States as determined by the Claim Administrator, subject to review of the Court.

27.     "Released Claims" means any and all manner of federal and state claims against ATC regardless of the cause of action in any way arising from or relating to conduct that was alleged or could have been alleged in the Actions arising from or related to any or all of the same factual predicates for the claims alleged in the Actions, including, but not limited to, any and all claims that Plaintiffs raised or could have raised related to the thread count of the Product or Products.

28.     "Released Parties" means ATC and all of its respective past, present and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), manufacturers, distributors, licensors (including, but not limited to, Tempur Pedic Management, LLC, Tempur World, LLC, Sealy Technology, LLC, and their affiliates, distributors, and licensees), retailers, customers, predecessors, and successors, and all of their respective franchisees, sub-franchisors, officers, directors, managing directors, employees, agents, contractors, other independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of the franchisees' and sub-franchisors' respective

officers, directors, managing directors, employees, agents, and independent contractors, and the affiliated legal entities through which any of the foregoing Products were marketed, advertised, or sold, if any.

29.    "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or Settlement Class Members.

30.    "Settlement" means the settlement of the Actions contemplated by this Settlement Agreement.

31.    "Settlement Benefit(s)" means the benefits provided to Settlement Class Members as set forth in Section C of this Settlement Agreement.

32.    "Settlement Class" means the class of persons that will be certified by the Court for settlement purposes only, namely, all persons who purchased the Product anywhere in the United States during the period of October 19, 2016 to the date of an order from the Court granting Preliminary Approval of the Settlement.

33.    "Settlement Class Member" means a member of the Settlement Class who does not file a valid request for exclusion from the Settlement Class.

34.    "Settlement Website" means an internet website created and maintained by the Claim Administrator, the URL of which shall be specified in the Notice Plan.

35.    "<u>Settling Parties</u>" means Plaintiffs and ATC.

36.    "<u>Total Monetary Settlement Amount</u>" means $750,000.00 (Seven Hundred and Fifty Thousand Dollars) in United States currency. All costs of Settlement, including all payments to Settlement Class Members (including Plaintiffs), all attorneys' fees, expenses and costs, and all costs of notice and administration, will be paid out of the Total Monetary Settlement Amount, and ATC will pay nothing apart from the Total Monetary Settlement Amount.

37.    "<u>Valid Claim</u>" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the directions accompanying the Claim Form and the provisions of the Settlement; (b) on the initial submission, accurately, fully and truthfully completed and executed, with all of the information requested in the Claim Form, by a Class Member; (c) returned either electronically or via mail and postmarked by the Claim Filing Deadline or, if submitted online, is received by the Claim Filing Deadline; and (d) determined to be valid by the Claim Administrator.

**B.    Stipulation to Class Certification**

38.    The Settling Parties hereby stipulate for purposes of this Settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes as to ATC. The Settling Parties stipulate and agree to the conditional certification of the Settlement Class for purposes of this Settlement only. Should, for whatever reason, the Settlement not become Effective, the Settling Parties' stipulation to class certification as part of the Settlement shall become null and void, while ATC reserves the right and ability to thereafter challenge class certification of a litigation class if the Settlement does not become Effective for any reason.

39.    Neither this Settlement Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Settlement Agreement, should be intended to be, construed as, or deemed to be evidence of an admission or concession by ATC that a class should be or should have been certified for litigation purposes, and none of them shall be admissible in evidence for any such purpose in any proceeding.

## C.    **Settlement Benefits**

40.    Subject to the rights and limitations set forth in this Settlement Agreement, every member of the Settlement Class shall have the right to submit a claim for the settlement benefits detailed in this Section C. A claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth in this Section C. Submission of a claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any of the Settling Parties, any member of the Settlement Class, or any other person, except as expressly provided herein.

41.    At the election of the Settlement Class Member, Claim Forms may be submitted in paper via regular U.S. Mail or online at the Settlement Website. Claim Forms must be postmarked or submitted online no later than the Claim Filing Deadline. Claim Forms postmarked or submitted online after that date will not be Valid Claims. For Claim Forms that are submitted online, the Settlement Class Member shall have the opportunity to upload Proof of Purchase image files (*e.g.*, jpg, tif, pdf); to preview and confirm information entered in the Claim Form prior to submitting the claim; and to have a confirmation email sent that includes the information submitted, the names of the files uploaded, and the date and time the Claim Form was received.

42.    On the Claim Form, the Settlement Class Member, or a Person with authority to sign and bind the Settlement Class Member, must provide and certify the truth and accuracy of the

following information under the penalty of perjury by signing the Claim Form physically, or by e-signature, to be considered a Valid Claim:

    a.   The Settlement Class Member's name and mailing address;

    b.   The Settlement Class Member's email address (unless the Settlement Class Member submits a claim form by U.S. Mail, in which case an email address is optional, or the Settlement Class Member attests that he or she does not have an email address);

    c.   That the Settlement Class Member made the purchase or purchases directly at a retail establishment or online; and

    d.   That the claimed purchases were not made for purposes of resale, commercial use, or for any other purpose.

43.    Subject to the total dollar value cap in Settlement Benefits as provided in Paragraph 45, each Settlement Class Member who submits one (1) Valid Claim per household, as determined by the Claim Administrator, shall receive a Settlement Benefit as follows:

    a.   A Settlement Class Member who submits a Valid Claim with Proof of Purchase shall receive a cash payment of $5.00 per Product for which Proof of Purchase is provided, with no limit.

    b.   A Settlement Class Member who submits a Valid Claim without Proof of Purchase shall receive a cash payment of $5.00 per Product claimed, up to a maximum of eight (8) Products.

    c.   Claims with Proof of Purchase and without Proof of Purchase shall be cumulative. For example, if a Claimant makes a claim for six (6) products without Proof of

Purchase and for five (5) Products with Proof of Purchase, that Claimant shall receive compensation for eleven (11) Products for $55.00.

d.  The total cash payment due to the Settlement Class Member shall be provided electronically or in a single check payable to the Settlement Class Member, as elected by the Settlement Class Member.

44.    Each Household is limited to and may only submit a single Claim Form and is subject to the limits for a single Settlement Class Member.

45.    If the total dollar value of Valid Claims submitted exceeds the portion of the Total Monetary Settlement Amount of seven hundred and fifty thousand U.S. dollars ($750,000) that remains after the Total Monetary Settlement Amount is reduced due to payment of notice and administration costs; Attorneys' Fees and Costs and expenses to Plaintiffs' Counsel; and service awards to the Class Representatives, the Settlement Benefit payable for each Valid Claim shall be reduced on a *pro rata* basis.  If the total dollar value of Valid Claims submitted is less than the portion of the Settlement Amount of seven hundred and fifty thousand U.S. dollars ($750,000) that remains after the Total Monetary Settlement Amount is reduced due to payment of notice and administration costs; Attorneys' Fees and Costs and expenses to Plaintiffs' Counsel; and service awards to the Class Representatives, the Settlement Benefit payable for each Valid Claim shall be increased on a *pro rata* basis.

46.    The Claim Administrator shall be solely responsible for, among other things, providing notice as set forth in the Notice Plan, processing Claim Forms, administering the Settlement Website, administering the exclusion process, administering the Settlement Benefit claims process described herein (including receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from

the Settlement Class), all required notices, and such other duties as may be reasonably necessary to administer the terms of this Settlement Agreement. The Claim Administrator shall not approve duplicate or multiple claims for the same purchase, but shall deem valid only one claim for each purchase. The Claim Administrator and Parties shall have the right to audit claims, and the Claim Administrator may request additional information from Claimants.

47.     The determination of validity of claims shall occur within a reasonable time. The Claim Administrator shall have discretion to reasonably approve or deny all claims. Class Counsel and Defendant shall have the right to audit claims and to challenge the Claim Administrator's decision by motion to the Court.  Class Counsel's or Defendant's choice not to audit the validity of any one or more Claim Forms shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly, shall not be construed as a waiver or relinquishment by such Party as to any of its audit and other rights under this Settlement Agreement.  No person shall have any claim against Plaintiffs, Defendant, Class Counsel, Defendant's Counsel, or the Claim Administrator based on any determination of a Valid Claim or distributions or awards made in accordance with this Settlement Agreement and the exhibits hereto.  Neither Plaintiffs nor Defendant, nor their respective counsel, shall have any liability whatsoever for any act or omission of the Claim Administrator.

48.     Within thirty (30) calendar days after the Claim Filing Deadline, the Claim Administrator shall notify by email (or U.S. Mail if no email address is provided) all Settlement Class Members whose Claims are denied of the reason(s) for the denial, using the email address or physical address (if any) provided by the Settlement Class Member on the Claim Form. If no email address or physical address is provided by the Settlement Class Member on the Claim Form,

the Claim Administrator shall not have an obligation to provide the Settlement Class Member any notification of the denial of the claim or the reasons for denial.

49.    Valid Claims shall be paid to the Settlement Class Member electronically or by check mailed to the address provided on the Claim Form, as updated in the National Change of Address Database, within one hundred and fifty (150) calendar days after Final Approval. In the event of an appeal from Final Approval, Valid Claims shall be paid within sixty (60) calendar days after the Effective Date.

50.    All settlement payments shall be subject to a ninety (90) calendar days void period, after which the payments shall no longer be negotiable. If a settlement payment is not negotiated, the Settlement Class Member shall not be entitled to any further payment under this Settlement Agreement. If the check is returned as undeliverable, the Claim Administrator shall send an email to the Claimant, if an email address was provided with the claim, to attempt to obtain a better physical address, and if obtained, shall mail the check to the new physical address, but shall have no other obligation to skip-trace or obtain an updated physical address thereafter. The return or failure to cash checks shall have no effect on a Settlement Class Member's release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

51.    No deductions for taxes will be taken from any Settlement Benefit at the time of distribution. Settlement Class Members are responsible for paying all taxes, if any, due on such Settlement Benefits. All Settlement Benefit payments shall be deemed to be paid solely in the year in which such payments are actually issued. Counsel in the Actions and the Parties do not purport to provide legal advice on tax matters to each other or Settlement Class Members. To the extent this Settlement Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. federal or any state tax issue, such advice is not intended or

written to be used, and cannot be used, by any Person for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

**D.**    **Approval of this Settlement Agreement and Dismissal of the Actions**

52.    The Settling Parties agree to make best efforts to effectuate this Settlement Agreement, including, but not limited to, seeking the Court's approval of procedures (including, but not limited to, the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e); and scheduling a final fairness hearing under Federal Rule of Civil Procedure 23(e)) to obtain Final Approval of the Settlement and the final judgment dismissing with prejudice of the Actions. Within sixty (60) calendar days of the date by which all signatures are made to this Settlement Agreement and provided to Class Counsel, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve the Settlement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include a proposed form of order preliminarily approving the Settlement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of this Settlement.  The Settling Parties shall take all reasonable actions as may be necessary to obtain preliminary approval of the Settlement. To the extent the Court finds that the Settlement does not meet the standard for preliminary approval, the Settling Parties will negotiate in good faith to modify the Settlement Agreement directly or with the assistance of mediator, Ret. U.S. Magistrate Judge Lisa Lenihan, and will endeavor to resolve any issues to the satisfaction of the Court.

**E.**    **Notice and Claims Administration**

53.    The Settling Parties agree to the use of Verita Global, LLC ("Verita") as a Claim Administrator and in charge of all notices for the Settlement.

54.     Within ten (10) calendar days after the filing with the Court of this Settlement Agreement and the accompanying Preliminary Approval Motion, Verita, the Claim Administrator, shall cause notice of the Settlement Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").

55.     Prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in a downloadable PDF format; answers to frequently asked questions; a contact information page that includes the address for the Claim Administrator and addresses and telephone numbers for Class Counsel and Defendant's Counsel; the Settlement Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the motion for Final Approval and Plaintiffs' application(s) for Attorneys' Fees and Costs, Plaintiffs' application(s) for service awards, and any order on Final Approval.

56.     The Claim Administrator will terminate the Settlement Website two-hundred and forty (240) calendar days after either: (1) the Effective Date, or (2) the date on which the Settlement is terminated or otherwise not approved by the Court.

57.     Notice to the Settlement Class shall be provided on websites and/or social media platforms chosen by the Claim Administrator and accessible to desktop and mobile users, so that overall notice of the Settlement is reasonably calculated to apprise the Settlement Class Members of the Settlement. Such notice shall begin thirty (30) calendar days after Preliminary Approval. No later than fourteen (14) calendar days prior to the hearing on Final Approval, the Claim Administrator shall submit a declaration to the Court under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered.

58.     The Claim Administrator shall establish and maintain a toll-free telephone helpline, available 24 hours per day, where callers may obtain information about the Settlement and Actions.

59.     Class Counsel and Defendant shall supervise the Claim Administrator in the performance of the notice functions set forth in this Section E.

60.     At least fourteen (14) calendar days prior to the Final Approval hearing referenced in Paragraph 76 of this Settlement Agreement, the Claim Administrator shall certify to the Court that it has complied with the notice requirements set forth herein.

61.     All of the costs of notice and claims administration shall be paid solely from the Total Monetary Settlement Amount.

**F.     Class Counsel's Attorney Fees and Expenses and Class Representatives' Payments**

62.     Attorneys' Fees, Costs, and Expenses. No later than thirty (30) calendar days prior to the initially scheduled hearing on Final Approval, Class Counsel may apply to the Court for payment from the Total Monetary Settlement Amount of up to one-third (1/3) of the Total Monetary Settlement Amount, or $250,000, for Class Counsel's work in any and all of the Actions. Class Counsel shall also be allowed to apply for a separate payment for reimbursement of costs and expenses, which shall be paid as part of Attorneys' Fees and Costs awarded to Class Counsel, and which shall also be paid solely from the Total Monetary Settlement Amount. Defendant agrees not to oppose Class Counsel's application for Attorneys' Fees and Costs, as long as they are no more than the amounts identified immediately above.  Class Counsel submits to the jurisdiction of the Court for the enforcement of this provision of the Settlement Agreement and for enforcement of all other provisions of this Settlement Agreement.

63.     Class Representatives' Payments. No later than thirty (30) calendar days prior to the initially scheduled hearing on Final Approval, Plaintiffs may apply to the Court for service

awards in an amount of $5,000 for each Class Representative (for a total of $20,000), subject to approval by the Court, as compensation for the work the Class Representatives performed to represent the class. Defendant agrees not to oppose the application for service awards, as long as they are no more than the amounts identified immediately above.  Service award payments also shall be paid out of the Total Monetary Settlement Amount.

64.    Defendant shall be responsible for paying its own attorneys' fees and expenses.

65.    The Attorneys' Fees and Costs awarded to Class Counsel shall be paid to Class Counsel within thirty (30) calendar days after the Effective Date.

66.    Any Court-approved service award shall be paid to Plaintiffs within thirty (30) calendar days after the Effective Date.

G.    **Class Settlement Procedures**

67.    <u>Exclusions and Objections</u>. The Long Form Notice shall advise prospective Settlement Class Members of their rights to forgo the benefits of this Settlement and pursue an individual claim; to object to this Settlement individually or through counsel; and, if they object, to appear at the Final Approval hearing.

68.    If any Settlement Class Member wishes to object to the Settlement, the Settlement Class Member must submit a written objection to the Claim Administrator. The written objection may be submitted by U.S. Mail, express mail, or electronic mail, but to be timely, it must be received or postmarked by the Opt-Out and Objection Deadline.  Each objection must include: (i) the case name and number: *Santiago et al. v. American Textile Co., Inc..*, Case No.: 2:23-cv-1811-CCW; (ii) the name, address, and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful,

and legal and factual support for the right to such compensation; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the Final Approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the Final Approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class litigations submitted in any state or federal court in the United States in the previous five (5) years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any). Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection. Failure to include any of the information or documentation set forth in this paragraph also shall be grounds for overruling an objection. The Parties may respond to any objection to the Settlement with appropriate arguments and evidence.

69. If any Settlement Class Member wishes to be excluded from (in other words, opt out of) this Settlement, the Settlement Class Member may do so by completing the exclusion form at the Settlement Website; downloading and submitting to the Claim Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Long Form Notice, to the Claim Administrator. Requests to exclude must be received by the Claim Administrator (if submitted electronically) or postmarked (if sent via U.S. Mail or express mail) by the Opt-Out and Objection Deadline or they shall not be valid. A Settlement Class Member

who elects to exclude themselves from this Settlement shall not be permitted to object to this Settlement or to intervene. Any Settlement Class Member who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the Final Approval in the Actions relating to this Settlement Agreement, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendant relating to the Released Claims.

70.     The proposed Preliminary Approval Order and Long Form Notice will provide that any Settlement Class Member wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

71.     Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties. At least fourteen (14) calendar days prior to the hearing on Final Approval, Plaintiffs' Counsel shall file all such objections and supporting documentation with the Court along with any response to the objection made by the Parties.

72.     At least fourteen (14) calendar days prior to the hearing on Final Approval, the Claim Administrator shall prepare a list of the names of the Persons who have excluded themselves from the Settlement Class in a valid and timely manner, and Class Counsel shall file that list with the Court.

73.     If a Settlement Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected.

74.     A Settlement Class Member who objects to the Settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed in the same way as all other Claim Forms. A Settlement Class Member shall not be entitled to an extension to the Claim Filing Deadline merely because the Settlement Class Member has also submitted an objection.

75.     If a Settlement Class Member submits both an objection and an exclusion request, the exclusion shall take precedence and be considered valid and binding, and the objection shall be deemed to have been sent by mistake and rejected.

76.     <u>Final Approval Process</u>. If the Settlement is preliminarily approved by the Court, Plaintiffs shall timely seek Final Approval of the Settlement and entry of a final judgment order as to ATC:

(a)     certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3), solely for purposes of this Settlement;

(b)     granting Final Approval of the Settlement as fair, reasonable, and adequate within the meaning of Federal Rules of Civil Procedure 23(e), and directing the consummation of the Settlement according to its terms and conditions, without material modification of those terms and conditions;

(c)     determining that the Settlement notices constituted the best notice practicable under the circumstances of this Settlement Agreement and the fairness hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

(d)     directing that, as to ATC, the Actions be dismissed with prejudice and, except as provided for herein, without costs (except as provided in this Settlement);

(e)     discharging and releasing the Released Parties from all Released Claims;

(f)    enjoining Plaintiffs and members of the Settlement Class from suing any of the Released Parties for any of the Released Claims;

(g)    confirming that the appropriate notice pursuant to CAFA has been provided;

(h)    reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including reserving exclusive jurisdiction over the administration and consummation of this Settlement to the United States District Court for the Western District of Pennsylvania; and

(i)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment as to ATC

The Parties shall take all reasonable actions as may be necessary to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

77.    This Settlement Agreement will become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

## H.    Releases, Discharge, and Covenant Not to Sue

78.    Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from, any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, treble or multiplied damages, punitive damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, actual or contingent, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that

have accrued as of the date of Preliminary Approval of the Settlement arising from or related to the Released Claims. The Released Claims include, but are not limited to, any and all claims alleged or that could have been alleged in the Actions related to the Products, including common law and consumer protection claims brought in the Actions and similar state and federal statutes. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Preliminary Approval of the Settlement; and (ii) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

79.     The Releasing Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims. Nevertheless, the Releasing Parties expressly, fully, finally, and forever settle and release, and, upon the Effective Date, shall be deemed to have, and by operation of the final judgment and order of dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims, without regard to the subsequent discovery or existence of such other, different, or additional facts, as well as any and all rights and benefits existing under: (i) Cal. Civ. Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

or (ii) any equivalent, similar or comparable present or future law or principle of law of any jurisdiction, including, but not limited to, Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;" or (iii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. The Releasing Parties acknowledge that the inclusion of unknown claims in the definition of Released Claims was separately bargained for and was a material element of the Settlement Agreement.

80.     If any of the Releasing Parties hereafter sues any of the Released Parties (or brings an arbitration) for any of the Released Claims, this Settlement Agreement, when pleaded, shall be and constitute a complete defense and bar thereto. The Released Parties shall be entitled to recover from the associated Releasing Parties their reasonable attorney's fees and litigation expenses in any such action.

81.     Each Releasing Party represents and warrants that it is the sole owner of any and all claims that it has or ever had against any of the Released Parties and that it has not sold, assigned, or in any way encumbered any such claims, in whole or in part, to any person or party.

**I.     Payment of the Settlement Amount**

82.     The Claim Administrator will open a special interest-bearing settlement escrow account or accounts, established for that purpose as a qualified settlement fund as defined in Section 1.468B-1(a) of the U.S. Treasury Regulations (the "Escrow Account"). Within ten (10) business days after Preliminary Approval of the Settlement, or after the Claim Administrator has provided wire instructions to ATC, whichever occurs later, ATC will deposit one hundred and fifty thousand ($150,000) dollars of the Settlement Amount into the Escrow Account. Within thirty (30) calendar days of Final Approval, ATC will deposit the remainder of the Settlement Amount into the Escrow Account. All accrued interest shall be for the benefit of the Settlement Class Members unless the Settlement is not approved, in which case the interest shall be for the benefit of ATC.

**J.     The Settlement Fund**

83.     The Total Monetary Settlement Amount and any interest earned thereon shall be held in the Escrow Account and constitute the "Settlement Fund."  The full and complete cost of all settlement notices, claims administration, Settlement Class Members' compensation, Attorneys' Fees and Costs of the Actions, other litigation costs of Plaintiffs, service awards to the Class Representatives (all as approved by the Court), and all applicable taxes, if any, assessable on the Settlement Fund or any portion thereof, will be paid out of the Settlement Fund. In no event will ATC's monetary liability with respect to the Settlement exceed the Total Monetary Settlement Amount.

84.     After Preliminary Approval of the Settlement and approval of a class Notice Plan, the Claim Administrator may utilize a portion of the Settlement Fund to provide notice of the Settlement to potential members of the Settlement Class. ATC will not object to the Claim Administrator withdrawing from the Settlement Fund, subject to any necessary Court approval, up

to $150,000 to pay the costs for notice and administration. The amount spent or accrued for notice and notice administration costs is not refundable to ATC in the event the Settlement Agreement is disapproved, rescinded, or otherwise fails to become Effective.

85.     ATC will not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, use or administration except as expressly otherwise provided in this Settlement Agreement. ATC's only payment obligation is to pay the Total Monetary Settlement Amount.

86.     There will be no reduction of the Total Monetary Settlement Amount based on opt-outs. The Settlement will be non-reversionary except as set forth in Paragraphs 82 and 91. If the Settlement becomes Effective, no proceeds from the Settlement will revert to ATC regardless of the claims that are made.

87.     No disbursements shall be made from the Settlement Fund prior to the Effective Date of this Settlement Agreement except as described in Paragraph 84.

88.     The Releasing Parties will look solely to the Settlement Fund for settlement and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against ATC or the Released Parties.

**K.     Taxes**

89.     The Claim Administrator is solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the

Settlement Fund. All taxes (including any interest and penalties) due, if any, with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. ATC has no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the Settlement does not become Effective and the Settlement Fund is returned to ATC. In the event the Settlement does not become Effective and any funds including interest or other income are returned to ATC, ATC will be responsible for the payment of all taxes (including any interest or penalties), if any, on said interest or other income. ATC makes no representations regarding, and will not be responsible for, the tax consequences of any payments made pursuant to this Settlement Agreement to Plaintiffs' Counsel or to any Settlement Class Member.

**L.**     **Rescission**

90.     If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if such approval is modified or set aside on appeal in any material respects, or if the Court does not enter Final Approval, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for the Effective Date do not occur, then this Settlement Agreement may be rescinded by ATC or by Plaintiffs on behalf of the Settlement Class by written notice to the Court and to counsel for the other Party filed and served within ten (10) business days of the entry of an order not granting court approval or having the effect of disapproving or materially modifying the terms of this Settlement Agreement. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to pay Plaintiffs' Attorneys' Fees and Costs shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such final judgment order. The Parties have agreed in that,

within five (5) calendar days after the deadline for filing timely opt-out requests has passed, Plaintiffs and the Claim Administrator will provide to ATC a list of exclusion requests.

91.    If the Settlement or Settlement Agreement is rescinded for any reason, then the balance of the Total Monetary Settlement Amount remaining in the Settlement Fund will be returned to ATC with interest accrued thereon. In the event that the Settlement Agreement is rescinded, and subject to the dollar limits set forth in Paragraph 84 above: (a) the funds already expended from the Settlement Fund for the costs of notice and administration will not be returned to ATC; and (b) funds to cover notice and administration expenses that have been incurred but not yet paid from the Settlement Fund will also not be returned to ATC.

92.    If the Settlement or Settlement Agreement is rescinded for any valid reason before payment of claims to Settlement Class Members, then the Parties will be restored to their respective positions in the Actions as of the Execution Date. Plaintiffs and ATC agree that any rulings or judgments that occur in the Actions on or after January 31, 2025 and before this Settlement Agreement is rescinded will not bind Plaintiffs, ATC, or any of the Released Parties. Plaintiffs and ATC agree to waive any argument of claim or issue preclusion against Plaintiffs or ATC arising from such rulings or judgments. In the event of rescission, the Actions will proceed as if this Settlement Agreement had never been executed and this Settlement Agreement, and representations made in conjunction with this Settlement Agreement, may not be used in the Actions or otherwise for any purpose. ATC and Plaintiffs expressly reserve all rights if the Settlement Agreement does not become Effective or if it is rescinded by ATC or the Plaintiffs. The Parties agree that pending deadlines for motions not yet filed, and all deadlines (whether pending or past) for motions that will be withdrawn pursuant to this Settlement Agreement, shall be tolled for the period from the Execution Date, until the date this Settlement or Settlement Agreement is

rescinded, and no Party shall contend that filing or renewal of such motions was rendered untimely by or was waived by the operation of this Settlement Agreement.

93.    The Parties' rights to terminate this Settlement Agreement and withdraw from this Settlement Agreement are a material term of this Settlement Agreement.

94.    ATC reserves all of its legal rights and defenses with respect to any claims brought by potential opt-outs.

**M.    <u>Miscellaneous</u>**

95.    This Settlement Agreement and any actions taken to carry out the Settlement are not intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or of the validity of any claim, defense, or point of fact or law on the part of any party. ATC denies the material allegations of the complaints in the Actions. Neither this Settlement Agreement, nor the fact of Settlement, nor settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by ATC, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by ATC in any proceeding.

96.    This Settlement Agreement was reached with the assistance of counsel after arm's-length negotiations before neutral mediator, Ret. U.S. Magistrate Judge Lisa Lenihan.  The Parties reached the Settlement Agreement after considering, among other things, the risks and costs of litigation. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. The terms of the settlement continue to be subject to mediation privilege and must be kept strictly confidential until a motion for preliminary approval is filed—except as necessary for ATC to meet its financial or contractual

reporting obligations, including the ability of ATC to share this Settlement Agreement, or drafts of the Settlement Agreement, with the Released Parties.

97.     Any disputes relating to this Settlement Agreement will be governed by Pennsylvania law without regard to conflicts of law provisions.

98.     This Settlement Agreement constitutes the entire, complete, and integrated agreement among Plaintiffs and ATC pertaining to the Settlement of the Actions against ATC, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written between Plaintiffs and ATC. Plaintiffs and ATC agree that this Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs (or their duly authorized representative, including Plaintiffs' Counsel) and ATC and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.  This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

99.    This Settlement Agreement may be executed in counterparts by Plaintiffs and ATC, and a facsimile or pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

100.    No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Released Party, Plaintiff, member of the Settlement Class, or Plaintiffs' Counsel.

101.    Neither Plaintiffs nor ATC shall be considered the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Settlement Agreement to be construed against the drafter.

102.    The provisions of this Settlement Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

103.    The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement and the Settlement, including any disputes related to the interpretation or effect of this Agreement, or any other disputes related to this Agreement.

104.    It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

105.    The terms of the Settlement Agreement are and shall be binding upon and inure to the benefit of, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, Released Parties, and any Settlement Class Members.

106.     This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Released Party, and upon the Effective Date, the Releasing Parties shall be forever barred from initiating, asserting, maintaining or prosecuting any and all Released Claims against any Released Party.

107.     Any disputes between ATC and Plaintiffs' Counsel concerning this Settlement Agreement shall, if they cannot be resolved by the Settling Parties, be presented to Ret. U.S. Magistrate Judge Lisa Lenihan, or another mutually agreed upon mediator, for assistance in mediating a resolution.

108.     Each Party acknowledges that he, she, or it has been and is being fully advised by competent legal counsel of such Party's own choice and fully understands the terms and conditions of this Settlement Agreement, and the meaning and import thereof, and that such Party's execution of this Settlement Agreement is with the advice of such Party's counsel and of such Party's own free will. Each Party represents and warrants that it has sufficient information regarding the transaction and the other parties to reach an informed decision and has, independently and without relying upon any representations by or on behalf of any other parties, other than those representations expressly set forth in writing in this Settlement Agreement, and based on such information as it has deemed appropriate, made its own decision to enter into this Settlement Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Settlement Agreement.

109.     All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier. A copy of such notice shall also be provided by email.

If directed to Plaintiffs, the Settlement Class, or any member of the Settlement Class, to:

Michael R. Reese
**REESE LLP**
100 W. 93rd St., Floor 16
New York, New York 10025
*mreese@reesellp.com*

If directed to ATC:

Michael J. Joyce
James A. Morsch
**SAUL EWING LLP**
161 N. Clark Street, Suite 4200
Chicago, Illinois 60601
*michael.joyce@saul.com*
*jim.morsch@saul.com*

110.    Each of the undersigned attorneys represents that he or she is fully and expressly

authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement on

behalf of each and every one of the clients for which counsel is signing.

**[SIGNATURES ON THE FOLLOWING PAGE]**

BoldSign Document ID: 3fd59935-6dbd-4bc4-b3f6-f99ed8cf29a1

**APPROVED AND AGREED:**

DATED:  February 12, 2025

*James Bruno*
_____
James Bruno
*Plaintiff and Class Representative*

DATED:  February 12, 2025

*Alma Lancaster*
_____
Alma Lancaster
*Plaintiff and Class Representative*

DATED:  February 12, 2025

*John Santiago*
_____
John Santiago
*Plaintiff and Class Representative*

DATED:  February 14, 2025

Kevin Shaw (Feb 14, 2025 10:40 EST)
_____
Kevin Shaw
*Plaintiff and Class Representative*

DATED:  February 18, 2025

**REESE LLP**

_____
Michael R. Reese
*Co-Lead Class Counsel and Plaintiffs' Counsel*

DATED:  February 12, 2025

**SHEEHAN & ASSOCIATES, P.C.**

*Spencer Sheehan*
_____
Spencer Sheehan
*Co-Lead Class Counsel and Plaintiffs' Counsel*

**AMERICAN TEXTILE COMPANY, INC.**

DATED:  February 20, 2025

_____
Erin Ickes, Sr.
Director, Legal and Compliance Officer and
authorized signatory

## __LIST OF EXHIBITS__

EXHIBIT A – CLAIM FORM

EXHIBIT B – LONG FORM NOTICE

EXHIBIT C – ONLINE NOTICE

Execution Copy

# EXHIBIT A

*Santiago v. American Textile Company, Inc.,* No. 2:23-cv-1811-CCW (W.D. Pa.)

### Claim Form

To qualify for a cash payment, you must submit a completed Claim Form by **Month ___, 2025**.

In order to qualify for a cash payment, you <u>must complete</u> Sections I and II below. By signing and submitting this Claim Form, you are authorizing the Settlement Administrator to contact you for more information, if needed, to help evaluate your claim. All information you provide will be used only for purposes of administering this Settlement.

### I.    CLAIMANT INFORMATION

First Name:_____

Last Name:_____

Email Address (optional if form is mailed):_____

Mailing Address:_____

City _____ State_____ Zip Code_____

### II.    PRODUCT(S) PURCHASED

You can file a Claim Form for:

- Up to eight (8) Products (up to $40 total, @ $5.00 ea.) per Household *without* providing supporting Proof of Purchase documentation; and

- An unlimited number of Products (@ $5.00/ea.) *with* supporting Proof of Purchase documentation.

You can make both a claim for purchases without Proof of Purchase and purchases with Proof of Purchase and you will be paid for the total amount of such a combined claim (subject to the limits above regarding claims without Proof of Purchase being limited to eight (8) Products).

Tell us about the Product(s) you purchased.

| Product | Quantity | Proof of Purchase Enclosed (Y/N) | Total Amount Claimed (quantity x $5.00) |
|---|---|---|---|
| | | | $_____ |
| | | | $_____ |
| | | | $_____ |

| TOTAL | | | $_____ |
|---|---|---|---|

(Attach additional sheets if necessary)

## III.   PAYMENT OPTIONS

If you use this paper Claim Form, a check will be mailed to the mailing address above. If you want to receive an electronic payment, please submit your Claim online at [ADD WEBSITE].

## IV.   CERTIFICATION

**I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. I further declare that (1) I purchased the above-mentioned Product(s) directly at a retail establishment or online; and (2) the Product(s) claimed above were purchased for personal use and not for purposes of resale, commercial use, or for any other purpose.**

Signed: _____     Date:_____

## **STOP**

Before mailing, did you:
- Complete Sections I and II
- Sign and date Section IV
- Enclose Proof of Purchase documentation, if any (*e.g.*, receipt or order confirmation)

Mail this Claim Form by **[DATE]** to:

*Santiago v. American Textile Co., Inc.,* Settlement Administrator
P.O. Box _____
City, ST _____-____

— OR —

Submit this Claim Form at www.[website].com by **[DATE]**.

Questions?  Call [1-XXX-XXX-XXXX] toll free or visit [website]

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

# If you purchased Sealy 1250 thread count bedding products, you may be entitled to a payment from a class action settlement.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- A settlement has been proposed in class action lawsuits against American Textile Company, Incorporated ("Defendant" or "ATC") claiming Defendant falsely advertised, labeled, and marketed the thread count of its textile products, including bedding products with the Sealy name, including, but not limited to, products under the "Ultimate Indulgence," "Premium Comfort," "Cool Comfort," "Premium Cooling," and "Superior Cooling" descriptions.

- If you purchased one or more of the bedding products with the Sealy name, including, but not limited to "Ultimate Indulgence," "Premium Comfort," "Cool Comfort," "Premium Cooling," and "Superior Cooling" with a thread count of 1250 listed on the packaging ("Product" or "Products"), you are included in this Settlement as a "Settlement Class Member."

- Settlement Class Members[1] can file a Claim Form to receive $5 for each Product purchased, subject to certain limits depending on whether proof of purchase is available.

- Your legal rights are affected regardless of whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way you can get a cash payment from this Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Do not get a settlement payment. This is the only option that allows you to be part of any other lawsuit against the Defendant for the legal claims made in this case and released by the Settlement. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court with reasons why you do not agree with the Settlement. |
| **GO TO THE FINAL APPROVAL HEARING** | You may ask the Court for permission for you or your attorney to speak about your objection at the Final Approval Hearing. |
| **DO NOTHING** | You will not get a cash payment from this Settlement and you will give up certain legal rights. |

---

[1] Capitalized terms not defined herein have the meaning set forth in the Settlement Agreement, available at www.website.com.

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The United States District Court for the Western District of Pennsylvania (the "Court"), which is in charge of one of the cases against ATC subject to the Settlement, still has to decide whether to approve the Settlement. If the Court denies Final Approval of the Settlement, the Settlement will be null and void and the litigations will continue with the Defendant.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 4**

   1.  Why is this Notice being provided?
   2.  What are these lawsuits about?
   3.  What is a class action?
   4.  Why is there a settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . **PAGE 5**

   5.  How do I know if I am part of the Settlement?
   6.  I am still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** . . . . . . . . . . . . . . . . **PAGE 5**

   7.  What does the Settlement provide?

**HOW TO GET BENEFITS—SUBMITTING A CLAIM FORM** . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 6**

   8.  How do I get a cash payment?
   9.  When will I get my cash payment?
  10.  What am I giving up to get a cash payment or stay in the Settlement?
  11.  What are the Released Claims?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 7**

  12.  How do I get out of the Settlement?
  13.  If I exclude myself, can I still get a cash payment from the Settlement?
  14.  If I do not exclude myself, can I sue the Defendant for the same thing later?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 7**

  15.  Do I have a lawyer in this case?
  16.  How will Class Counsel be paid?

**OBJECTING TO THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . **PAGE 8**

  17.  How do I tell the Court that I do not like the Settlement?
  18.  What is the difference between objecting to and excluding myself from the Settlement?

**THE COURT'S FINAL APPROVAL HEARING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 9**

  19.  When and where will the Court decide whether to approve the Settlement?
  20.  Do I have to come to the Final Approval Hearing?
  21.  May I speak at the Final Approval Hearing?

**IF YOU DO NOTHING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 9**

  22.  What happens if I do nothing?

**GETTING MORE INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . **PAGE 9**

  23.  How do I get more information?

## BASIC INFORMATION

| 1. Why is this Notice being provided? |
|---|

The Court directed that this Notice be provided because you have a right to know about a proposed settlement that has been reached in class action lawsuits and about all of your options before the Court decides whether to grant Final Approval to the Settlement. If the Court approves the Settlement, and after objections or appeals, if any, are resolved, the Settlement Administrator appointed by the Court will distribute the benefits that the Settlement allows. This Notice explains the lawsuits, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

Judge Christy Criswell Wiegand of the United States District Court for the Western District of Pennsylvania is overseeing one of the class actions. The case is known as *Santiago v. American Textile Company, Inc.,* No. 2:23-cv-1811-CCW, and, together with *Bruno v. ATC*, No. 1:22-cv-2937 (N.D. Ill.), *Lancaster v. ATC*, No. 1:22-cv-1280 (N.D.N.Y.), and *Shaw v. ATC*, No. 1:23-cv-10193 (SDNY), are referred to as the "Actions." The people who filed the lawsuit are called Plaintiffs and the company they sued, American Textile Company, Incorporated, is called "ATC" or the "Defendant."

| 2. What are the lawsuits about? |
|---|

Plaintiffs claim that Defendant falsely advertised, labeled, and marketed the thread count of its textile products with the Sealy name, including, but not limited to, under the "Ultimate Indulgence," "Premium Comfort," "Cool Comfort," "Premium Cooling," and "Superior Cooling" descriptions in violation of federal and state law, including state consumer protection laws, state common law, and other claims.

Defendant has denied and continues to deny any and all allegations of wrongdoing, fault, liability, or damage of any kind.

| 3. What is a class action? |
|---|

In a class action, one or more people called class representatives (in these Actions, John Santiago, James Bruno, Alma Lancaster, and Kevin Shaw) sue on behalf of people who have similar claims. Together, all these people are called a class or class members. One court resolves the issues for all class members, except for those who exclude themselves from the settlement class.

| 4. Why is there a settlement? |
|---|

The Court did not decide in favor of the Plaintiffs or the Defendant. Instead, the Plaintiffs negotiated a settlement with the Defendant that allows both parties to avoid the risks and costs of lengthy and uncertain litigation and the uncertainty of a trial and appeals. It also allows Settlement Class Members to be compensated without further delay. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT?

| 5.  How do I know if I am part of the Settlement? |
|---|

You are part of this Settlement as a Settlement Class Member if you purchased one or more Products listed below anywhere in the United States between October 19, 2016 and [insert date of PA].

Products include bedding products with the Sealy name, including, but not limited to, the following bedding products with a 1250 thread count listed on the packaging:

- Ultimate Indulgence;
- Premium Comfort;
- Cool Comfort;
- Premium Cooling; and
- Superior Cooling.

| 6.  I am still not sure if I am included. |
|---|

If you are still not sure whether you are included, call 1-___-___-____ or visit www.[website].com for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| 7.  What does the Settlement provide? |
|---|

Defendant has agreed to pay a total of $750,000 into a Settlement Fund. After deducting the costs of notice and settlement administration, Court-approved attorneys' fees, costs and expenses, and Class Representative service awards, the net Settlement Fund will be used to pay Settlement Class Members who submit a Valid Claim through the Claim Form. The $750,000 Settlement Fund is the limit of what Defendant will pay for this Settlement. In the event Valid Claims are made, and the aggregate amount of the Valid Claims are either less than or in excess of the amount available to Settlement Class Members, the amount paid for each Valid Claim will be increased or decreased on a *pro rata* (proportional) basis from the $750,000.

| 8.  What can I get from the Settlement? |
|---|

Settlement Class Members can receive $5 per Product purchased during the Class Period. You can file a Claim Form for:

- Up to eight Products (up to $40 total) per Household *without* providing supporting Proof of Purchase documentation; and
- An unlimited number of Products *with* supporting Proof of Purchase documentation.

You can make both a claim for purchases without Proof of Purchase and purchases with Proof of Purchase and you will be paid for the total amount of such a combined claim (subject to the limits above regarding claims without Proof of Purchase being limited to eight (8) Products).

Payment amounts may be adjusted *pro rata* (proportional) based on the amount available in the net Settlement Fund and the total number of valid claims filed.

## HOW TO GET BENEFITS—SUBMITTING A CLAIM FORM

| 9.  How do I get a cash payment? |
| --- |

To qualify for a cash payment, you must complete and submit a Claim Form by **Month __, 2025**. Claim Forms are available and may be filed online at www.[website].com. Claim Forms are also available by calling 1-___-___-____ or by writing to: *Santiago v. American Textile Co., Inc.* Settlement Administrator, P.O. Box _____, City, ST _____-____.

| 10. When will I get my cash payment? |
| --- |

The Court will hold a Final Approval Hearing at __: 0 .m. on Month __, 2025, to decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals. It is always uncertain whether any appeals can be resolved favorably, and resolving them can take time, perhaps more than one year.

| 11. What am I giving up to get a cash payment or stay in the Settlement? |
| --- |

Unless you exclude yourself from the Settlement, you will give up your right to sue, continue to sue, or be part of any other lawsuit against Defendant and certain Released Parties for any claim related to the Actions or released by the Settlement Agreement. You will be legally bound by all of the Court's orders, as well as the "Released Claims," below.

Released Parties means ATC and all of its respective past, present and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), manufacturers, distributors, licensors (including, but not limited to, Tempur Pedic Management, LLC, Tempur World, LLC, Sealy Technology, LLC, and their affiliates, distributors, and licensees), retailers, customers, predecessors, and successors, and all of their respective franchisees, sub-franchisors, officers, directors, managing directors, employees, agents, contractors, other independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of the franchisees' and sub-franchisors' respective officers, directors, managing directors, employees, agents, and independent contractors, and the affiliated legal entities through which any of the foregoing Products were marketed, advertised, or sold, if any.

| 12. What are the Released Claims? |
| --- |

"Released Claims" any and all manner of federal and state claims against ATC regardless of the cause of action in any way arising from or relating to conduct that was alleged or could have been alleged in the Actions arising from or related to any or all of the same factual predicates for the claims alleged in the Actions, including, but not limited to, any and all claims that Plaintiffs raised or could have raised related to the thread count of the Product or Products. More information about the Released Claims can be found in the Settlement Agreement, available at www.website.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| 13. How do I get out of the Settlement? |
| --- |

To exclude yourself from the Settlement, you must complete and submit an Exclusion Request Form online at www.website.com or send a letter to the Settlement Administrator containing:

1) your full name and current address;
2) a clear statement saying you elect to be excluded from the Settlement in *Santiago v. American Textile Co., Inc.,* No. 2:23-cv-1811-CCW; and
3) your signature.

You must submit your Exclusion Request Form online by **Month __, 2025** or by mail postmarked no later than **Month __, 2025,** to:

*Santiago v. American Textile Co., Inc.,* Settlement Administrator
P.O. Box _____
City, ST _____-____

| 14. If I exclude myself, can I still get a cash payment from the Settlement? |
| --- |

No. If you exclude yourself from the Settlement, do not send in a Claim Form to ask for a cash payment because you will no longer be eligible for one.

| 15. If I do not exclude myself, can I sue the Defendant for the same thing later? |
| --- |

No. If you stay in the Settlement (*i.e.*, do nothing or do not exclude yourself from the Settlement), you give up any right to separately sue the Defendant for the claims released by the Settlement Agreement.

## THE LAWYERS REPRESENTING YOU

| 16. Do I have a lawyer in this case? |
| --- |

Yes. The Court appointed Michael R. Reese of Reese LLP and Spencer Sheehan of Sheehan & Associates, P.C. to represent you and other Settlement Class Members. These lawyers are called Class Counsel. These lawyers and their law firms are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 17. How will Class Counsel be paid? |
| --- |

If the Settlement is approved and become final, Class Counsel will ask the Court to award attorneys' fees of up 33.33% of the Settlement Fund (or up to $250,000) plus reasonable litigation expenses, as well as $5,000 Service Awards to each of the Class Representatives ($20,000 total). If approved, these amounts, as well as the costs of notice and settlement administration, will be deducted from the Settlement Fund before making payments to Settlement Class Members who submit a Valid Claim via a Claim Form.

## OBJECTING TO THE SETTLEMENT

### 18. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve the Settlement. The Court will consider your views before making a decision. To object, you must file a written objection with the Settlement Administrator either online or by mail by **Month __, 2025**.

Your objection must include:

1) the case name and number (*Santiago v. American Textile Co., Inc.,* No. 2:23-cv-1811-CCW);
2) your full name, current address, telephone number, and email address;
3) a sworn statement or documentation indicating that you are a member of the Settlement Class;
4) the reasons why you object to the Settlement, including any documents supporting your objection;
5) the name, address, and telephone number of your attorney (if any) representing you in your objection, including any former or current counsel who may be entitled to compensation for any reason if your objection is successful, and legal and factual support for the right to such compensation;
6) a statement indicating whether you or your attorney intend to appear at the Final Approval Hearing;
7) if you have retained an attorney and your attorney will appear at the Final Approval Hearing,
   a. the name, address, telephone number, and email address of your attorney;
   b. a list of all persons who will be called to testify in support of the objection;
   c. copies of any papers, briefs, or other documents upon which the objection is based;
   d. a list of all other class actions you or your attorney has been involved in present objections over the last five years (whether or not you or your attorney appeared in the matter); and
   e. your attorney's signature
8) your signature.

Your objection must be submitted online at www.website.com by **Month __, 2025** or mailed to the *Santiago v. American Textile Co., Inc*., Settlement Administrator, P.O. Box _____, City, ST _____-____ postmarked by **Month __, 2025**.

### 19. What is the difference between objecting to and excluding myself from the Settlement?

Objecting is telling the Court that you do not like something about the Settlement. Excluding yourself is telling the Court that you do not want to be a Settlement Class Member in this Settlement. If you exclude yourself from the Settlement, you have no basis to object or file a claim because the Settlement no longer applies to you.

## THE COURT'S FINAL APPROVAL HEARING

### 20. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at __:_0__.m. on Month__, 2025, at the United States District Court for the Western District of Pennsylvania, Joseph F. Weis, Jr. U.S. Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania 15219. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will take into consideration any properly-filed written objections and may also listen to people who have asked to speak at the hearing (*see* Question 22). The Court will also decide whether to approve payments of attorney's fees, costs and expenses, and service awards.

### 21. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you file an objection, you do not have to come to Court to talk about it. You may also hire your own lawyer to attend, at your own expense, but you are not required to do so.

### 22. May I speak at the Final Approval Hearing?

Yes, you may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must follow the instructions provided in Question 18 above. You cannot speak at the hearing if you exclude yourself from the Settlement.

## IF YOU DO NOTHING

### 23. What happens if I do nothing?

If you do nothing, you will not receive a cash payment from this Settlement. If the Court approves the Settlement, you will be bound by the Settlement Agreement. This means you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant or the Released Parties about the issues resolved by this Settlement and released by the Settlement Agreement.

## GETTING MORE INFORMATION

### 24. How do I get more information?

More details are in the Settlement Agreement, which is available at www.[website].com. You may also call 1-___-___-____, or write to the *Santiago v. American Textile Co., Inc.,* Settlement Administrator, P.O. Box _____, City, ST _____-____.

***Please do not call the Court or the Clerk of the Court for additional information.***
***Please do not call American Textile Company, Incorporated or its attorneys.***
***They cannot answer any questions regarding the Settlement or the Actions.***

# EXHIBIT C





# DIGITAL MEDIA MESSAGING & DESIGN SAMPLES

*Santiago v. American Textile Co., Inc.*
January 23, 2025

Verita Global, LLC

**NOTE**: All creatives displayed herein are for representative purposes only and may not be to scale. Some ads are built on responsive platforms and may not display all text in view based on placement, screen size, etc.

*Santiago v. American Textile Co., Inc.*

# DISPLAY

Digital media impressions will be served on desktop and mobile devices via various websites and apps (e.g., via the Google Display Network).





300x250

300x600



728x90

**Display Text:**

If you purchased Sealy 1250 thread count bedsheets, you may be entitled to a payment from a class action settlement.

Learn More

Website.com

**Click-through URL:** http://website.com/

# SOCIAL MEDIA

Digital media impressions will also be served on Facebook.

### *Facebook Page*



*Santiago v. American Textile Co., Inc.*





Facebook Desktop Feed Ad

Facebook Mobile Feed Ad



Facebook Stories Ad

**Headline:** Bedsheet Thread Count Settlement

**Description:**

If you purchased Sealy 1250 thread count bedsheets, you may be entitled to a payment from a class action settlement.

**Call to Action:** Learn more

**Website URL:** http://website.com/
***URL as displayed:*** website.com

**Image text:**
*Santiago v. American Textile Co., Inc.*
Class Action Settlement

Website.com